UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



-----------------------------------------------------------x

MENORAH HOME AND HOSPITAL
FOR THE AGED AND INFIRM,

              Plaintiff,

    -against-

FIREMAN'S FUND INSURANCE
COMPANY,

              Defendant.

-----------------------------------------------------------x

MENORAH HOME AND HOSPITAL
FOR THE AGED AND INFIRM,

              Third-Party Plaintiff,

    -against-

THE TRANE COMPANY,

              Third-Party Defendant.

-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 04-CV-3172 (FB)(CLP)

*Appearances:*
*For the Third Party Plaintiff:*
FREDERICK RICHARD ROHN, ESQ.
Sacks Montgomery, P.C.
800 Third Avenue
New York, NY 10022

*For the Third Party Defendant:*
ANN E. SCHOFIELD, ESQ.
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10017

**BLOCK, Senior District Judge:**

       This diversity case arises out of a construction project to build and renovate

facilities for plaintiff/third-party plaintiff, Menorah Home and Hospital for the Aged and

Infirm ("Menorah"). Before the Court is a motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56 by third-party defendant, The Trane Company

("Trane"), for the dismissal of the third-party complaint; for the reasons set forth below,

the motion is denied.

## I.

On February 24, 1999, Menorah entered into a contract with J.A. Jones Construction Group, LLC, f/k/a J.A. Jones/GMO LLC ("Jones"), whereby Jones agreed to build and renovate facilities for Menorah (the "Project"), and to complete the Project by February 24, 2001. Defendant, Fireman's Fund Insurance Company ("FFIC"), as surety for the Project, issued a performance bond on behalf of Jones, as principal, and Menorah, as owner-obligee. Pursuant to its obligations under the performance bond, when Jones defaulted on the contract, FFIC took over the Project.

On July 26, 2004, Menorah filed a complaint against FFIC alleging that FFIC had breached the performance bond by failing to (1) complete the Project in a timely manner, (2) correct the deficiencies in the work performed by Jones, and (3) pay Menorah for the costs and damages incurred as a result of breaches by Jones and FFIC. In its answer, FFIC asserted, *inter alia*, a counterclaim seeking to hold Menorah responsible for repairs by FFIC of a boiler/chiller ("the Boiler/Chiller Claim").

### A. The Boiler/Chiller Claim

In January of 2004, Menorah demanded that FFIC (a) repair the boiler/chiller, and (b) provide machinery capable of rendering temporary heat and air conditioning while the repairs were being made. FFIC complied, but did so under a full reservation of rights to recover its costs from Menorah; in its Boiler/Chiller Claim, FFIC asserted that the boiler/chiller "had been damaged as a result of Menorah's failure to properly maintain [it]." Trane's Mot. for Summ. J., Ex. B (Counterclaim), ¶ 16.

## B. Menorah's Third-Party Complaint against Trane

In response to the Boiler/Chiller Claim, Menorah disclaimed responsibility and, thereafter, brought a third-party complaint against Trane alleging that it had a service contract with Trane for the inspection, maintenance, and repair of the boiler/chiller; therefore, the "[i]mproper maintenance of the boiler/chiller, as alleged by FFIC . . ., would constitute a material breach and default by Trane of its obligations under [the service contract]." Trane's Mot. for Summ. J., Ex. D (Third-Party Compl.), ¶ 11. Accordingly, Menorah alleged that, if "FFIC is entitled to recovery from Menorah [under its Boiler/Chiller Claim], then Menorah will be entitled to recovery over against Trane for such amounts on account of Trane's breach of contract." *Id*. at ¶ 12.

## C. Trane's Answer

In its Answer, Trane denied any liability for the costs associated with the boiler/chiller; according to Trane, these costs were incurred not because Trane had failed to maintain the boiler/chiller, but because Menorah had failed to operate it properly. *See* Trane 56.1 Statement ¶ 25.

## D. The Settlement Agreement Between Menorah and FFIC

Thereafter, Menorah entered into a Settlement Agreement with FFIC, settling all of their claims other than FFIC's Boiler/Chiller Claim. With respect to that claim, the agreement contained the following liquidation agreement:

> Menorah admits and acknowledges liability to FFIC on FFIC's [Boiler/Chiller Claim]. . . because of improper maintenance of the Boiler/Chiller [ ], and Menorah and FFIC agree to fix and liquidate Menorah's liability for the Boiler/Chiller [ ]Claim in such amount as Menorah may recover from Trane on account

3

of such [ ]claim. . .

> As further partial compensation for the losses suffered by Menorah . . . because of delays in completion of the Project, [FFIC] agrees that Menorah may retain any recovery from Trane on account of the Boiler/Chiller [ ]Claim.

Trane's Mot. for Summ. J., Ex. F (Settlement Agreement), at 5.

## E. Trane's Motion for Summary Judgment

The sole issue presented by Trane's motion for summary judgment is whether Menorah and FFIC executed a valid liquidating agreement. If the agreement is valid, then Menorah is entitled to proceed with the Boiler/Chiller Claim against Trane on behalf of FFIC; if the agreement is not valid, as Trane claims, then Menorah is barred from bringing FFIC's Boiler/Chiller Claim and the case against Trane must be dismissed.

## II.

Construction projects inevitably involve the allocation of rights and responsibilities among the owner, surety, general contractor, subcontractors and suppliers, not to mention third parties who may cause delays or increased costs; not all of these parties are in privity with each other. Thus, for example, an owner damaged by delays caused by a subcontractor must sue the general contractor, who must then sue the at-fault subcontractor.

Liquidating agreements bridge such "privity gaps" and are recognized under New York law as a valid means of avoiding the duplicative lawsuits that would otherwise be necessary to ensure that cost overruns and delay damages are ultimately borne by the responsible party. *See, e.g., North Moore Street Developers v. Meltzer/Mandl Architects, P.C.,*

799 N.Y.S.2d 485, 488 (1st Dept. 2005).[1] Such agreements concern three parties: (1) the damaged party, (2) the intermediary, and (3) the responsible party. In the example given above, the owner is the damaged party, the general contractor the intermediary and the subcontractor the responsible party; however, these classifications vary from case to case. Thus, in *North Moore Street*, the damaged party was the general contractor, the intermediary was the owner, and the responsible party was the architect. Here, FFIC (standing in the shoes of the defaulting general contractor) was the damaged party, Menorah the intermediary, and Trane the responsible party.

A liquidating agreement contain three basic elements:

(1) the imposition of liability upon the [intermediary] for a [damaged party's] increased costs, thereby providing the [intermediate party] with a basis for legal action against the [responsible party], (2) a liquidation of liability in the amount of the [intermediary's] recovery against the [responsible party], and (3) a provision for the pass-through of that recovery to the [damaged party]. . . .

*Id.* at 489.

The parties agree that (1) Menorah acknowledged liability to FFIC on the Boiler/Chiller Claim, and (2) that Menorah and FFIC agreed to fix and liquidate Menorah's liability on this claim in the amount that Menorah may recover from Trane; thus, it is undisputed that the first two elements of a liquidating agreement were satisfied. Trane argues that the liquidation agreement is invalid because it lacks the third essential element, a valid pass-through provision. In addition, Trane contends that the agreement is

---

[1]This being a diversity case, New York substantive law applies. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

unenforceable because: (1) FFIC has never claimed that Trane is responsible for the damages alleged in the Boiler/Chiller Claim; and (2) there is no gap in privity preventing FFIC from pursuing the Boiler/Chiller Claim directly against Trane. *See* Trane's Mot. for Summ. J., at 7. The Court addresses these arguments in turn.

## A. The Validity of the Pass-Through Provision

Trane claims that the pass-through provision in the alleged liquidating agreement is invalid because it allows Menorah to retain any recovery it obtains from Trane rather than passing it through to FFIC. *See id.* at 3. Menorah responds, however, that any recovery from Trane would indeed pass-through to FFIC because it would "satisf[y] one of FFIC's obligations under the Settlement Agreement." Menorah's Opp. to Trane's Mot. for Summ. J., at 1. As Menorah explains:

> Trane's narrow focus on the fact that the liquidating agreement does not require a physical transfer of recovered monies from Menorah to FFIC, with FFIC immediately returning such monies to Menorah, does not . . . negate [ ] that any recovery from Trane is passed-though to FFIC in partial satisfaction of FFIC's obligation to Menorah. . . . Menorah's right to "retain" such recovery relates merely to the logistics of money transfers. . .

*Id.* at 5. The Court agrees; the liquidating agreement should not be invalidated based on what is essentially an accounting issue between Menorah and FFIC, and cannot serve as a vehicle for Trane to avoid liability. The Court notes that liquidating agreements have been upheld even where an intermediary and damaged party divide the proceeds recovered. *See, e.g., North Moore Street*, 799 N.Y.S.2d at 487 (liquidating agreement upheld where only "a portion of any recovery by plaintiff from defendant would be passed through"); *see also, e.g., J.L. Simmons Company, Inc. v. United States*, 304 F.2d 886 (Ct. Cl.

1962) (liquidating agreement upheld where the recovery was divided between the intermediary and damaged party); *Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica*, 717 F. Supp. 1021 (S.D.N.Y. Jul. 21, 1989) (upholding a liquidating agreement, requiring the intermediary and damaged party to "split the proceeds" of damage award).

## B. Trane's Other Contentions

### 1. FFIC'S Assertion of Blame

That FFIC asserted in its counterclaim that Menorah was to blame for the boiler/chiller damages, and not Trane, is irrelevant to the validity of the liquidating agreement; indeed, there would be no reason for FFIC to allege that Trane, with whom it was not in privity, was at fault when it was asserting a claim against Menorah. The validity of a liquidating agreement depends not on the damaged party's assertion of blame against the responsible party, but rather on its assertion of liability against the intermediary, an assertion that was unquestionably present here. Menorah's admission of liability to FFIC is what "liquidates" FFIC's Boiler/Chiller claim, which in turn allows it to meet Trane's argument, heavily relied upon at oral argument, that Menorah has suffered no damages as a result of Trane's alleged breach of the maintenance agreement.

### 2. Privity Gap

Trane also argues that the liquidating agreement is invalid because there was no need to enter into the agreement to bridge the privity gap since, "as an insurance carrier, FFIC could have stepped into Menorah's shoes and pursued a[n equitable] subrogation claim directly against Trane." Trane's Mot. for Summ. J., at 7.

Liquidating agreements and equitable subrogation are both mechanisms for ensuring that ultimate liability to the damaged party rests with the responsible party, *see North Moore Street*, 799 N.Y.S.2d at 489 (in a liquidating agreement "[t]he subcontractor is left in basically the same position of having to defend against the general contractor and prove that it did not cause damage to the owner" (citation omitted)); *cf. American Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 2007 WL 674691, at *7 (E.D.N.Y. Feb. 28, 2007) ("Subrogation is an equitable doctrine, the purpose of which "is to afford a person who pays a debt that is owed primarily by someone else every opportunity to be reimbursed in full."); however, it does not follow that both are available in all circumstances. Had Menorah asserted the Boiler/Chiller Claim against FFIC, FFIC would have, upon payment of the claim, been equitably subrogated to Menorah's right to sue Trane for breach of the maintenance agreement. Since, however, *FFIC* asserted the claim against *Menorah*, no such subrogation was necessary because Menorah was already in privity with Trane; all that was necessary was an agreement liquidating the amount of the claim.

Even if equitable subrogation were a alternate basis for recovery against Trane, Trane cannot complain that FFIC and Menorah settled their differences through a liquidating agreement, thereby saving FFIC the costs and burdens of suing as a subrogee. *See Ardsley Construction Company, Inc. v. The Port of New York Authority*, 403 N.Y.S. 2d 43, 44 (1st Dep't 1978) ("[An] agreement between plaintiffs and the [damaged party] with respect to any recovery from defendant affects only the relationship between plaintiffs and [the damaged party] and should not be available to defendant as a shield against liability for breach of contract.").

The Court additionally notes that in *North Moore Street*, the court held that the validity and enforceability of a liquidating agreement was unaffected by the fact that the damaged party may have been entitled to sue the alleged responsible party. 799 N.Y.S.2d at 492 ("Given our determination that the liquidating agreement is valid and enforceable, we need not reach plaintiff's alternative argument that, even in the absence of a liquidating agreement, [the damaged party] was entitled to assert a direct claim against [the allegedly responsible party] for professional malpractice based on [the damaged party's] reliance on the latter's architectural services.").

## CONCLUSION

Since Menorah and FFIC entered into a valid and enforceable liquidating agreement, Trane's motion for summary judgment is denied.

**SO ORDERED**.

/signed/
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 13, 2007