UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MENORAH HOME AND HOSPITAL FOR THE
AGED AND INFIRM,

                Plaintiff,

   -against-

FIREMAN'S FUND INSURANCE COMPANY

                Defendant.
------------------------------------------------------------x
MENORAH HOME AND HOSPITAL FOR THE
AGED AND INFIRM,

                Third-Party Plaintiff,

   -against-

THE TRANE COMPANY

                Third-Party Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 04-CV-3172 (FB)

*Appearances:*
*For the Plaintiff:*
KENNETH R. PUHALA, ESQ.
THEODORE L. HECHT, ESQ.
ERIC ALWIN BODEN, ESQ.
Schnader Harrison Segal & Lewis, LLP
140 Broadway , Suite 3100
New York, NY 10005

*For the Third-Party Defendant:*
CHRISTOPHER R. CARTON
K&L Gates LLP
One Newark Center
Newark, NJ 07102

JOSEPH R. DISALVO, ESQ.
SUZANNE M. BRODOCK, ESQ.
McCarter & English, LLP
245 Park Avenue , 27th Floor
New York, NY 10167

**BLOCK, Senior District Judge:**

Third-party plaintiff, Menorah Home and Hospital for the Aged and Infirm ("Menorah"), obtained a jury verdict against third-party defendant, The Trane Company ("Trane"), for $1,008,040.64 in damages. Pursuant to Federal Rule of Civil Procedure 50(b), Trane now renews its motion for judgment as a matter of law,[1] asserting that the Court erred in admitting certain documents and that the verdict was not supported by legally sufficient evidence. For the reasons stated below, the motion is denied.

# I

The following facts are drawn from trial testimony except as otherwise noted. Menorah engaged general contractor JA Jones for a construction and renovation project at Menorah's health care facility in Brooklyn. Fireman's Fund Insurance Company ("Fireman's Fund") issued a surety bond under which it agreed to undertake completion of the project if JA Jones failed to do so. After JA Jones filed for bankruptcy in 2003, Fireman's Fund engaged Clark Surety Services ("Clark") to complete the project.

Prior to bankruptcy, JA Jones, through its subcontractors, installed a boiler-chiller manufactured by Trane. In January 2003, Menorah and Trane entered into a service agreement under which Trane would regularly inspect the machine and assess

---

[1] Although Trane categorizes its motion as pursuant to Federal Rule of Civil Procedure 50(a), it is Rule 50(b) that permits post-verdict renewal of a Rule 50(a) motion on which the Court has reserved decision. *See* Fed. R. Civ. P. 50(b). Thus, the Court will treat the motion as made under Rule 50(b).

and fix any problems. In January 2004, Trane determined that the machine was inoperable and shut it down.

In July 2004, Menorah filed a breach of contract action against Fireman's Fund alleging that Clark's work was defective and not completed in a timely manner. Fireman's Fund counterclaimed that Menorah was liable for approximately $900,000 that Fireman's Fund had spent repairing the boiler-chiller and providing temporary temperature control. As a result, Menorah filed a third-party complaint against Trane, alleging that Trane had breached its obligations under the service contract and demanding indemnification for any recovery by Fireman's Fund.

Menorah and Fireman's Fund reached a settlement in May 2006. Under the settlement agreement, Menorah admitted liability on the boiler-chiller counterclaim. The parties agreed to liquidate Menorah's liability in the amount Menorah recovered from Trane and permit Menorah to retain the amount it recovered. *See* Letter to Magistrate Judge Pollak, May 4, 2006; Oct. 2006 Motion for Summary Judgment, Ex. F. (Settlement Agreement).

Before trial on the third-party claim, Trane filed a motion *in limine* to preclude Menorah's proffered evidence of damages as insufficiently certain, arguing that Menorah had produced no evidence of what Fireman's Fund actually paid. Trane also objected to various trial exhibits, including Clark's vendor invoices – which it argued were inadmissible hearsay – and a spreadsheet based on those invoices. The Court discussed these issues with counsel off the record and denied Trane's motion.

Trial commenced on May 24, 2011. With respect to damages, Richard Kowalcyzk, Fireman Fund's Senior Director of Surety, testified that Clark billed the insurer for all of its costs and that Fireman's Fund paid "every cent." He explained that Clark would pay invoices it received from vendors and request compensation from Fireman's Fund, which would review the expenditure before approving release of funds.

The only evidence regarding the amount paid was introduced through the testimony of James Donegan, a consultant retained by Clark to oversee the Menorah project who monitored construction and cost issues. During his testimony, Menorah sought to introduce into evidence Exhibit 29, a spreadsheet identifying expenses stemming from the chiller-boiler repair. Trane objected that the exhibit's admission was "contingent upon certain testimony." In response, Donegan explained that he created Exhibit 29 based on his review of a broader spreadsheet made by the construction project's staff, which in turn was based on invoices Clark had received. These invoices were offered as Exhibit 30, which Donegan described as a collection of "bills that Clark incurred based upon the failure of the boiler." The Court asked Donegan if he could "identify them," had "gone over them," and could "recognize them," and he responded affirmatively. Donegan explained that, in contemplation of litigation, he had gathered invoices corresponding to estimated damages from Clark's files. "In some cases," rather than pulling the invoice from Clark's voluminous files, Donegan asked the vendor to send him a copy of the original invoice. Donegan confirmed that Exhibit 29 was based on the invoices contained in Exhibit 30 and both were accepted into evidence. They

4

identified expenses totaling $1,033,065.54, including the initial investigation and rebuilding costs.

Donegan stated that, as project executive, his job responsibilities including ensuring that all of the venders' bills were paid. Many – but not all – of the invoices had stamps facially indicating that Clark paid them. To the best of Donegan's knowledge, "[e]very single invoice that [Clark] sent to Fireman's Fund was paid" – he never heard otherwise and believed that Clark would not have continued working if it was not reimbursed.

Trane moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) at the close of Menorah's case and again at the at the conclusion of its own case, asserting that the only evidence of damages was "hearsay stacks of invoices" and that there was no evidence of payment. The Court reserved decision. On May 27, 2011, the jury returned its verdict that Trane had breached the service agreement, proximately causing Menorah to suffer general damages in the form of $1,008,040.64 paid by Fireman's Fund.

## II

As a threshold matter, contrary to Menorah's assertion, Trane's motion is timely. Rule 50(b) provides that "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a) . . . [n]o later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law." Because judgment has not yet been entered, Trane's motion is not barred by the rule.

5

Moreover, Trane raised its current arguments in its Rule 50(a) motion in a manner "sufficiently specific to alert [plaintiff] to alleged deficiencies in [its] proof." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (1993).

### III

Trane argues that the invoices used to calculate damages were inadmissible hearsay.[2] In response, Menorah argues that the invoices were properly admitted as business records pursuant to Rule 803(6).[3] That rule permits hearsay in the form of:

> "A . . . record . . . of acts [or] conditions . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record, . . . as shown by the testimony of the custodian or other qualified witness . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed. R. of Evid. 803(6) (subsequent amendments effective December 2011).

The foundational requirements are designed "to ensure that documents were not created for 'personal purpose[s] . . . or in anticipation of any litigation' so that the creator of the document 'had no motive to falsify the record in question.'" *U.S. v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (quoting *United States v. Freidin*, 849 F.2d 716, 719 (2d Cir. 1988).

---

[2]Trane objected to the invoices when they were admitted into evidence, preserving his current objection. *See* Fed. R. of Evid. 103(a).

[3]Menorah does not argue that the invoices are non-hearsay, only that they fall within the Rule 803(6) exception. They were "offer[ed] in evidence to prove the truth of the matter asserted," Fed. R. of Evid. 801, namely the cost of various services resulting from the boiler-chiller failure.

The Second Circuit "has adopted 'a generous view' of the business records exception, 'construing it to favor [ ] the admission of evidence . . . if it has any probative value at all.'" *U.S. v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995) (quoting *Freidin*, 849 F.2d at 722). While all the exception's requirements must be satisfied, "the 'principal precondition' to admissibility is the sufficient trustworthiness of the record." *Strother*, 49 F.3d at 874 (quoting *Saks Int'l, Inc. v. M/V Export Champion*, 817 F.2d 1011, 1013 (2d Cir.1987)).

It is well-settled that Rule 803(6) is not limited "to introduction of one's own business records." *United States v. Consolidated Edison Co. of New York, Inc.*, 580 F.2d 1122, 1131 n.18 (2d Cir. 1978) (affirming admission under Rule 803(6) of independent contractor's business records to prove amount of damages). "[T]here is no requirement that the person whose first-hand knowledge was the basis of the entry be identified, so long as it was the business entity's regular practice to get information from such a person." *Retirement Plan of UNITE HERE Nat. Retirement Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 289 (2d Cir. 2010) (quoting *Saks Int'l, Inc.*, 817 F.2d at 1013). Nor is it "necessary for a person in charge of preparation of a record to testify in order for that record to fall within the ambit of Rule 803(6)." *Schactman Fagan, Inc. v. Winthrop Laboratories, Inc.*, No. 82 Civ. 8398, 1985 WL 3126, at *1 (S.D.N.Y. Oct. 15, 1985).

In the present case, Donegan – who was responsible for monitoring the construction and costs – testified that he recognized the invoices contained in Exhibit 30 as the very invoices that were regularly sent to Clark by vendors in the course of the project. He compiled the invoices for litigation from either the project files or from the

7

files of the issuing venders. The invoices were therefore created near the time the costs were incurred, they were "kept in the course of a regularly conducted business activity and . . . it was the regular practice of that business activity to make the record." *Retirement Plan of UNITE HERE Nat. Retirement Fund*, 629 F.3d at 289. Nothing about the method or circumstances of the invoices' preparation suggests a lack of trustworthiness. Thus, Exhibit 30 fell under the business records exception and Exhibits 29 and 30 were properly admitted.

### III

Trane next argues that there was insufficient evidence that Fireman's Fund reimbursed Clark for its expenses or that, for those the invoices not stamped "paid," Clark compensated the venders. These arguments lacks merit.

In determining whether there was a "legally sufficient evidentiary basis for a reasonable jury to find for" Menorah, the Court must consider whether, "viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 120 (2d Cir. 1998) (quoting *Samuels*, 992 F.2d at 14 (further internal citations omitted)).

Here, there was testimony that, if credited, establishes that Clark paid all of the invoices and was reimbursed by Fireman's Fund. Kowalcyzk testified that Clark billed Fireman's Fund for all expenses it incurred on the project and that Fireman's Fund paid all billed costs. Donegan similarly testified that the invoices contained in

8

Exhibit 30 were all submitted to Fireman's Fund. He further stated that, as project manager, it was part of his responsibility to ensure that all of the venders were paid. In light of this testimony, the verdict was supported by legally sufficient evidence.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
December 16, 2011